IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 24, 2018 Session

### STATE OF TENNESSEE v. JOHN BASKINS

**Appeal from the Criminal Court for Knox County**
**No. 105862    Bob R. McGee, Judge**

_____

### No. E2017-00795-CCA-R3-CD

_____

The defendant, John Baskins, appeals his Knox County Criminal Court guilty-pleaded convictions of rape of a child and especially aggravated sexual exploitation of a minor, claiming that the trial court erred in the misapplication of an enhancement factor and that the 40-year sentence imposed was excessive.  Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Joshua Hedrick, Knoxville, Tennessee, for the appellant, John Baskins.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ashley McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Knox County Grand Jury charged the defendant with seven counts of rape of a child, seven counts of incest, five counts of especially aggravated sexual exploitation of a minor, and two counts of sexual exploitation of a minor arising out of the sexual assaults of the defendant's six-year-old niece, C.B.[1]  The defendant pleaded guilty to one count of rape of a child and one count of especially aggravated sexual exploitation of a minor in exchange for dismissal of the remaining charges.  The plea agreement provided for the sentence to be determined by the trial court and included the parties' agreement that the sentences should be concurrently aligned.

---

[1]    To protect the anonymity of the minor victim, we refer to her by her initials.

At the defendant's sentencing hearing, the State, in addressing enhancement factors, offered the following facts:

> At the time of the offense, the defendant was babysitting [C.B.]. The mother of this child and her boyfriend had left the niece, the victim in this case, with the defendant under the belief that he was going to babysit her, that he was going to treat her well, that he was going to protect her, and he did exactly the opposite, Your Honor.
>
> . . . .
>
> [T]his offense occurred on March the 23rd of 2015. [B.B.,[2]] who's . . . the mother of the victim . . . and her boyfriend at the time, Reggie Jones, came home from work early. . . . [T]he defendant had been left caring for [C.B.] the six-year-old child in this case. When Reggie walked upstairs, he saw the defendant with his pants down, and six-year-old [C.B.] was performing oral sex on this defendant.
>
> Obviously things in the house got very heated, and the defendant in this case fled to a bridge off of Asheville Highway where KPD responded. This defendant called 911, said he was going to jump from the bridge. He also called the victim's mother, [B.B.], and talked to her about what he was going to do.
>
> . . . .
>
> He was talked down by crisis negotiation, and then he was taken to the hospital. The mother calls 911 and reports that her six-year-old daughter has been raped.
>
> The defendant has been taken to KPD, and he is interviewed by Detective Shelley Clemons. Importantly he denies doing anything to this child at that time. Further proof showed that the defendant's penis was swabbed after Detective Clemons received a search warrant. This was sent to the Tennessee Bureau of Investigation, and Marla Wright

---

[2] We refer to the minor victim's mother by her initials as well.

who is a special agent with the TBI performed forensic analysis. The swab of his penis indicated the presence of Alpha-Amylase which is a component of saliva on this defendant's penis.

The State introduced into evidence the defendant's presentence report, which stated that the 24-year-old, unemployed defendant had a ninth-grade education and a lengthy history of alcohol and drug abuse. The defendant reported that he first used alcohol at the age of 10 and that his longest stretch of sobriety was one to two weeks. He also reported using marijuana three to four times per week since the age of 12 and claimed to have used opiates daily between the ages of 14 and 19. The defendant rated his mental health condition as poor, claiming to suffer from suicidal ideation, auditory hallucinations, schizophrenia, and bipolar disorder. Although the defendant had no prior criminal convictions, he had a juvenile record which included probation revocations and "informal adjustments" for truancy, theft, and assault.

The defendant's forensic psychological evaluation, which was admitted into evidence, indicated that the defendant suffered from depression and anxiety. The defendant stated his mother had used methamphetamines until his birth but then "got clean." The defendant also reported "a history of severe trauma, noting that his dad had committed suicide in front of him when" the defendant was eight years of age. With respect to his alcohol and drug use, the defendant stated that he had engaged in binge drinking for over 10 years and that he had used marijuana "essentially daily" from the age of 11 until his incarceration. The defendant also reported regular use of narcotic pain medication from the age of 13 until "the night of his incarceration" and stated that he had "tried cocaine" and "used LSD on at least one occasion during adolescence."

In the defendant's psychosexual evaluation, which was also admitted into evidence, the defendant revealed that he had been forcing the victim to engage in fellatio "for over two months before he was caught on March 23, 2015." The defendant told the evaluator that he had photographs on his cellular telephone of the victim's genitals, as well as videos "of the victim being forced to perform sexual acts." The defendant described how he "bribed" the victim, demonstrating "no empathy or remorse as evidenced by voice tone and facial expression" while doing so. The defendant "reported that he did not care that he could get into trouble at the time he was" raping the victim. The defendant then "stated he was accused by his family of raping 'some girl' but denies doing this," followed by a statement that he "'might as well go ahead and do it,' meaning he should rape someone as he was already being accused of the offense. After administering several tests to the defendant to evaluate his risk of reoffending and level of dangerousness, the evaluator stated that the tests showed that the defendant possessed "a highly deviant perception of relationships with children" and that the defendant lacked

"appropriate understanding of sexual boundaries and healthy sexual relationships." Although the defendant was rated at a low to moderate risk for reoffending, he scored at a high risk for dangerousness, "meaning he would be of great risk to the community if released" and "no level of community supervision available" could ensure that the defendant would not "pose a risk to others." The evaluator concluded that the defendant was "a danger to his community and require[d] a high level of supervision found only in incarceration."

Knoxville Police Department Officer Scott Sheppard testified that he performed a forensic analysis of the defendant's cellular telephone and its attached memory card. Officer Sheppard's analysis revealed the defendant's internet search history, which included dozens of pornography websites that, according to the website addresses and descriptions, involved sexual acts between and among close family members.

D.V.H.[3] testified that she was 13 years old and that, when she was four years of age, the defendant was her brother's best friend. D.V.H. testified that the then-16-year-old defendant sexually assaulted her by placing his penis on her buttocks. The defendant also covered D.V.H.'s face with a pillow to prevent her from screaming. D.V.H. stated that she had reported the incident to her mother and brother and that she had spoken to the police about it but admitted that she had never gone to court about the offense.

The State introduced into evidence a letter from the victim which stated that the defendant had threatened to harm her or her family if she told anyone about the abuse; that the defendant had taken photographs of her "and others on his phone on his lap with his clothes off"; and that the defendant forced her to "get on top of him" while both her clothing and the defendant's clothing were removed. The victim's mother read her victim impact statement aloud to the court:

> This has tor[n] my whole family apart. I was supposed to be able to trust him. He's my brother. And the sad case is that I don't even like to say that. I told my children this is someone you trust, someone you love, and he betrayed them. Of all people, he betrayed the children that looked up to him, that loved him. He helped raise them. And now they're confused; they're hurt. Now they don't even know who to trust.

---

[3] Again, we refer to minors by initials.

Hurt me, flipped my life upside down. They are my world. And if you hurt them, you hurt me. My life will never be the same because I have to know that I let a monster around my family. And it hurts me more than ever to know that my kids will never be the same from this, ever. They'll never be able to probably trust someone like that again.

At the conclusion of the sentencing hearing, the trial court found that two enhancement factors were applicable: the defendant's criminal history, specifically his sexual abuse of D.V.H., and his abuse of a position of trust as the victim's uncle. *See* T.C.A. § 40-35-114(1), (14). The trial court found the results of the defendant's psychosexual evaluation to be "[v]ery troubling," stating as follows:

[T]here is no level of community supervision available to ensure the [defendant] does not pose a risk to others. In legal terms, although it's not one of the enhancement factors, it is important I think and fundamental to law in general that in determining how long a person should be separated from society the issue of rehabilitation should be given some consideration.

And in this case, the expert appears to be telling us there isn't any way to supervise him. That suggests this is permanent. In other words, there's very little possibility of any rehabilitation in this case – and his lack of remorse all suggest that the Court should provide to this community as much protection from this defendant as it possibly can.

The trial court found there was "some mitigation in that [the defendant] did suffer a head injury," that the defendant "had been traumatized by his father's suicide," and that "he does have developmental limitations." The court went on to state that these mitigating factors were "far outweighed" by the enhancement factors. Finding that "the interest of the community in being protected from [the defendant] is paramount" and "controlling," the court sentenced the defendant to the maximum Range II sentence of 40 years for the rape of a child conviction. The trial court also imposed a 12-year sentence for the especially aggravated sexual exploitation of a minor conviction, to run concurrently with the defendant's 40-year sentence, for an effective sentence of 40 years to be served at 100 percent by operation of law.

Following the denial of his timely motion for new trial, the defendant filed a timely notice of appeal.

In this appeal, the defendant contends only that the trial court erred in its application of the criminal history enhancement factor and that the sentence imposed for the defendant's rape of a child conviction was excessive.

Our standard of review of the trial court's sentencing determinations in this case is whether the trial court abused its discretion, but we apply a "presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 706 n.41 (citing T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709.

With respect to the issue of the misapplication of the criminal behavior enhancement factor, the defendant argues that the behavior erroneously relied on by the trial court was a prior juvenile act which did not result in an adjudication of delinquency. We need not tarry long, however, over the defendant's claim because, even assuming that the trial court misapplied this factor, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. Nothing in the record suggests that the trial court in this case "wholly departed from" the Sentencing Act. To the contrary, the record reflects that the trial court considered all the relevant principles associated with sentencing, including the enhancement and mitigating factors, when imposing the sentences in this case, and the defendant concedes that the court appropriately applied the enhancement factor of the abuse of a position of trust.

With regard to the defendant's claim that the trial court erred by imposing the maximum in-range sentence of 40 years, the defendant essentially asks this court to reweigh the enhancement and mitigating factors to arrive at a lesser sentence. "A trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion," *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008), and this court is not free to reevaluate the weight and value assigned to the factors found by the trial court. The trial court considered the mitigating factors advanced by the defendant and determined that the enhancement factors far outweighed any mitigation. Moreover,

the trial court found the need to protect the community from the defendant to be "paramount" in its decision to impose a 40-year sentence. In our view, the trial court did not abuse its discretion by imposing this within-range sentence after thorough consideration of the purposes and principles of sentencing.

Based upon the foregoing analysis, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE